WESTCHESTER FIRE INS. CO. OF NEW YORK v. JOHN CONLON COAL CO.*

No. 6237.

Circuit Court of Appeals, Third Circuit.

July 2, 1937.

Rehearing Denied Sept. 22, 1937.

*Writ of certiorari denied 58 S.Ct. 271, 82 L.Ed. —.

Horace M. Schell, of Philadelphia, Pa., for appellant.

Leo W. White and Kenneth J. English, both of Pittston, Pa., for appellee.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, to which the record was removed from a state court, the plaintiff company, the insured, recovered a verdict against the insurer for loss of its coal breaker, destroyed by fire. On entry of judgment, the insurance company appealed. The opinion of the trial judge refusing a new trial is illuminating and helpful to this court on this review.

Without reciting all the details, we note the policy was upon a coal breaker which was totally destroyed. The breaker had stood idle for several months and it is contended the policy was voided by this fact and the typewritten provision attached, which reads as follows (16 F.Supp. 93, 94):

"Privileges Granted.— * * * to remain vacant not exceeding thirty (30) days in any one policy year after the period permitted for vacancy in the policy contract; to stand idle as occasion may require."

In that regard the court said:

"It has been held that a dwelling house is unoccupied when there is not habitually the presence of human beings, but it cannot be held that a breaker is intended to be lived or dwelt in. In determining what the contract means, the circumstances surrounding the making of and affecting the subject-matter to which it relates should be taken into consideration. The word unoccupied should be construed with reference to the nature and character of the building, the purposes for which it was designed, and the uses contemplated by the parties. It cannot be contended that a church is unoccupied because services are held therein only on Sunday, or that a school is unoccupied because school sessions are not held therein during school vacation. The uncontradicted evidence was that the breaker contained intact all the machinery and equipment necessary for its operation, was kept prepared at all times for immediate use; that there was a watchman in the breaker every day and every night; that the breaker was visited several times each day by the plaintiff's manager and other employees. It is common knowledge in the anthracite regions that breakers are shut down for long periods of time because of lack of orders for anthracite coal.

"It could not be found from the evidence that the breaker was abandoned, but it could be found from the uncontradicted evidence that it was being used for the practical purpose of keeping the machinery in proper condition · for immediate use for the preparation of coal when market conditions warranted the operation of the breaker. It has been held that, in order to show occupancy of a building used for manufacturing purposes, it is sufficient to show some practical use of the property. Halpin v. Phenix Insurance Company, 118 N.Y. 165, 23 N.E. 482. The defendant contends that a proper interpretation of the policy is that the breaker, in order to be occupied, should of necessity be operated, and that when it was not operated, that is, when it was idle, it was unoccupied. It is apparent that this is not a proper interpretation when we consider the provisions of the policy permitting the insured premises to stand idle without limit as to time. The interpretation contended for by the defendant is repugnant to and in conflict with the expressed permission for idleness. My conclusion is, that there was evidence in the case from which it could be found that the breaker was occupied at all times between the date of the policy and the fire."

We agree with this reasoning and conclusion.

It is, however, urged that no recovery can be had because proofs of loss were not furnished. In that regard the court held, and we agree therewith:

"The uncontradicted evidence shows that the breaker was completely destroyed by the fire. Under such circumstances, it is well settled that it is not necessary in order to recover to furnish a proof of loss in writing. Cara v. Newark Fire Insurance Co., 312 Pa. 489, 167 A. 356. There was evidence of a denial of liability by the company within 60 days after the fire, and

162

there was evidence that a detailed statement of the loss had been furnished defendant's adjuster; and there was also evidence of other facts which made the question as to whether proofs of loss were waived a question for the jury to decide. Globe & Rutgers Fire Insurance Co. v. Stallard (C.C.A.) 68 F.(2d) 237."

■ It it further contended that on grounds of public policy the insurance contract was void because Paul J. Conlon, the writing agent, was a stockholder and director of the plaintiff. Without quoting all the proofs bearing on the question of the defendant's knowledge of Conlon being a stockholder, we note what the trial judge held in that regard:

"I am of opinion that the defendant company has ratified the agreement which it now objects to. Haertrich entered into an agreement with Paul J. Conlon. The defendant company had knowledge of it, and acquiesced in it. It cannot at this time successfully dispute its liability on the policy in question. The evidence was sufficient to support a finding that the company had knowledge of, consented to, and ratified the act of Paul J. Conlon in insuring property in which he was financially interested."

■ It is contended that there was no sufficient proof of the value of the breaker. On the contrary, we hold there was. In that regard the court correctly summarized the proofs:

"The testimony as to damages consisted of the testimony of Edward P. Reilly, plaintiff's witness, who had been a breaker builder for 38 years. He testified that he visited the property covered by the policy about two years before the fire; that he made a sketch of the breaker and its contents; and as to the values of the breaker and its contents as of the time he made the sketch. Wm. R. Conlon, the general manager and a director of the John Conlon Coal Company, testified that there had been no change in the condition of the breaker building and contents from the time Edward P. Reilly made the inspection and the sketch of the breaker and its contents up to the time of the fire; and that the machinery in the breaker had been kept greased and in readiness to operate."

Without further prolonging this opinion with a discussion of other contentions made, all of which have been fully considered, and finding no error on the part of the court, we limit ourselves to stating that the judgment is affirmed.