## Wagner et al. v. Aetna Insurance Company

*Shelley & Reynolds*, for plaintiffs.
*Douglas D. Storey*, for defendant.

SHEELY, P. J., August 25, 1948.—Plaintiffs brought suit against defendant on a policy of inland marine insurance, known as cargo insurance, to recover for the loss of 354 bushels of peaches following an accident in which a truck belonging to plaintiffs upset. Fifty bushels of peaches were damaged in the accident and after the accident 304 bushels of peaches were stolen. The jury returned a verdict for plaintiffs for $1,546.98 and defendant has filed a motion for judgment n. o. v. and for a new trial.

Defendant contends that it is entitled to judgment n. o. v. because of the failure of plaintiffs to file a written proof of loss, signed and sworn to and containing the information required by the policy. The accident occurred on August 15, 1945, and on August 17, 1945, plaintiffs by writing did notify defendant's

agent concerning the facts of the accident, the time of the accident, the place of the accident, and that there had been a total loss of 354 bushels of peaches carried in one cargo. They requested the agent to advise them if more details were required. No further information was requested although the agent had several conversations with Mr. Wagner about the loss and about the price of peaches during the next 10 days. The question presented is whether this evidence was sufficient to go to the jury on the question of whether there had been a waiver of the filing of formal proofs of loss as required by the policy. The question was submitted and the jury found in the affirmative.

The policy contained the usual provisions that it was made subject to all the stipulations and conditions printed thereon, and that no officer or agent should have power to waive or be deemed to have waived any provision of the policy unless the waiver should be written upon or attached thereto. The policy provided under a heading "Notice of Loss" that if any loss occurred the assured should report the same immediately to the company with full particulars, and in case of failure to file written proofs of loss within 30 days after the loss occurred, the claim should be invalidated. Under a heading "Proof of Loss" the policy provided that it should be necessary for the assured to render a statement signed and sworn to stating the place, time, and cause of the loss or damage, and the interest of the assured and of all other persons in the property, the sound value thereof, and the amount of loss or damage thereon. The policy further provided that no action should be sustainable thereon unless the assured shall have complied with all requirements thereof.

We agree with defendant that the carrying out of these stipulations is usually considered as a condition precedent to the right to a verdict, and that the burden

is on the insured to show that he has performed: Butler Candy Co. v. Springfield Fire and Marine Insurance Co., 296 Pa. 552, 557 (1929). If plaintiffs herein had done nothing their claim would be invalid. But the rule is announced in Gould v. Dwelling House Insurance Co., 134 Pa. 570, 588 (1890) that:

"If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel. But if without valid reason he fails to comply with the requirements of his policy at all, or to do so within the stipulated time, then the liability of the company is discharged. . . ."

In the present case the insured did immediately notify the company of the loss and forwarded to the company the report of the accident as submitted by its truck driver who was in charge of the cargo. This report gave every detail of the loss which would have been required in a formal proof of loss except to state the value of the peaches. Peaches, however, are a standard commodity the price of which is regulated by the commodity markets and is readily ascertainable. Furthermore, the testimony shows that Mr. Wagner discussed the price of peaches with defendant's agent after giving the notice. It is contended by defendant that this report was merely the notice of loss required preliminarily and was not the formal proof of loss. There can be no reason why the insured should not comply with both requirements in one paper; particularly since the notice of loss is not required to be written: Lycoming County Mutual Insurance Co. v. Schollenberger, 44 Pa. 259; and it is evident

that that is what this insured intended. In their letter of transmittal they said: "If you require any further details, kindly let us know." This was an indication to the company that the insured did intend the report as a compliance with the requirements of his policy and, under the circumstances, was sufficient to take to the jury the question of waiver.

We also think there is merit in plaintiff's contention that the instant case comes within the rule applied in the "single structure cases." Here there was a total loss of an entire cargo of a single commodity. In Cara v. Newark Fire Insurance Co., 312 Pa. 489 (1933) the insurance covered the "building, building materials, lumber and supplies of every kind and description on the premises, being that which does or formerly did constitute a breaker" while in the course of demolition by plaintiff. The extent of the demolition at the time of the fire was not shown, but the single structure rule was applied. In Jenkins v. Franklin Fire Insurance Co., 282 Pa. 380 (1925) the policy covered household furniture which was totally destroyed. The single structure rule was applied in addition to the rule of waiver, the court quoting:

" 'The object sought to be accomplished by the requisition of a particular account of loss is to enable insurers to ascertain the amount of their liability while the facts are new and while evidence is attainable. Knowledge of the amount of loss is the substance, the particular statement is but a means of ascertaining it'."

In the present case the company had all the information which they would have had under a formal proof of loss and there can be no reason why the rule applied in cases of the total destruction of a single structure should not be applied.

The policy provided that it did not insure against loss or damage caused by the neglect of the assured

to use all reasonable means to save and preserve the property at and after any disaster insured against. Defendant contends that since the only evidence on this point was unimpeached documentary evidence consisting of the statement signed by defendant's truck driver, introduced into evidence as defendant's Exhibit No. 1, it was the duty of the court to hold as a matter of law that this evidence did show such neglect by plaintiffs, and that it is therefore entitled to judgment n. o. v. or, at least, to a new trial.

The only evidence offered by defendant was the statement of David A. McClintock, driver of plaintiffs' truck, which was forwarded to defendant's company with the notice of loss. Since this was the statement submitted by plaintiffs to defendant as evidence of the loss and since it was not contradicted in any way, we may accept the statement as representing the truth and the established facts. The statement recited that the driver was hauling a load of peaches to Syracuse, N. Y., and that at a point about four miles from Ithaca, N. Y., the truck upset, causing about 50 bushels of peaches to spill at the side of the road. The driver hitchhiked to Ithaca and tried to reach his employer by telephone. He talked to his foreman and reported the accident about 3 a.m., and then, feeling the effects of the shock, he remained at the Ithaca Hotel until about 9:15 a.m. He then tried to secure someone to haul the load to its destination and went back to the truck in a taxi, arriving there about 10:15 a.m. He then found that the remaining peaches had been stolen.

Defendant contends that the absence of the driver from the scene of the accident for a period of over seven hours constitutes neglect to use all reasonable means to save and preserve the property after the disaster. After considering the evidence and the fact that the truck had upset in such manner as to spill 50 bushels of peaches along the roadway we are of the

opinion that the verdict was against the weight of the evidence. No reason is shown for the failure of the driver to return earlier other than the fact that he was feeling the effects of the shock, but there is no testimony to show the extent of the shock and his report indicates that it did not prevent him from hitchhiking into Ithaca and making the necessary telephone calls to his foreman. There is no testimony to show what, if any, efforts were made to secure someone to watch the truck until it could be moved.

We are satisfied that we were correct in ruling that the burden of proof was upon defendant to show that the loss, or part of the loss, was due to the neglect of plaintiffs to use reasonable care to protect the property after the accident. The policy provided generally that it insured "against all risks of physical loss or damage from any external cause except as provided in the policy to which this rider is attached." The policy to which the rider was attached contained a provision that: "this policy does not insure"; and then follows nine paragraphs enumerating conditions or circumstances of loss under which the company would not be liable. One of these paragraphs contained the provision: "Against loss or damage caused by the neglect of the assured to use all reasonable means to save and preserve the property at and after any disaster insured against."

Defendant contends that by alleging in its affidavit of defense that the loss was due to neglect of plaintiffs it placed the burden upon plaintiffs of proving that the loss was not due to their neglect. In other words, it contends that the portion of the policy entitled: "This policy does not insure" took out of the general coverage of the contract all losses enumerated therein and that the burden was upon plaintiffs to bring themselves within the remaining coverage by proving the loss was not within the exceptions. In its brief it admits that

the cases on this point are by no means clear and cannot be reconciled, but contends that the most recent and better considered cases support its position.

Most of the cases relied upon by defendant are cases of insurance against death "as a result, directly and independently of all other causes, of bodily injury sustained through external, violent and accidental means." In O'Neill v. Metropolitan Life Insurance Co., 345 Pa. 232 (1942), Chief Justice Maxey reviewed the cases construing contracts of insurance against death or injury by "accidental means", and defined the burden upon a plaintiff to bring his case within the definition of that term under the cases. In a footnote, at page 242, he cited Travelers Insurance Co. v. Harris (Texas) 212 S. W. 933:

" 'Those Courts which treat the contracts as being general, and the clauses declaring what they shall not cover as "stipulations added to the principal contract to avoid the promise of the insurer by way of defeasance or excuse", hold that these clauses are defensive, and must be pleaded and sustained by the insurer; while the courts which construe the exception clauses as "taking something out of the general portion of the contract, so that the promise is to perform only what remains after the part excepted is taken", place the burden of pleading and proof upon the assured to negative them by showing that his cause of action does not come within the exception'."

To this Mr. Justice Maxey adds:

"Under the interpretation of 'death as the result of bodily injuries sustained through accidental means' prevailing in Pennsylvania, there is no occasion for any confusion or conflict as to where the burden of proof lies in cases like the one now before us."

This statement was based on the definition of "accidental means" and, consequently, the "accidental

means" cases are not authority for the question now before the court.

The sole test announced by the cases in Pennsylvania is that plaintiff must prove the operative facts, and the question remains as to what are the operative facts. The contract in this case is in general form and provides generally that it insures against all risks of physical loss or damage, "except". The operative facts are the physical loss or damage from an external cause while in transit, and if the testimony showed nothing more than these facts the company would be liable. If defendant contends that there are other facts which would relieve it from the general liability assumed under its policy the burden is upon it to allege and prove these facts. Of course, if plaintiffs' testimony shows the case to be within the exception, a non-suit would be entered.

In Trotter v. Industrial Life Insurance Co., 115 Pa. Superior Ct. 487 (1934) the action was on a life policy which provided that the policy was in full immediate force unless the insured should die of heart disease, etc., within one year. Defendant alleged that the assured had died with heart disease within the year. It was held that this was an affirmative defense and the burden of proof was on defendant. Likewise, in Gardecki v. Polish National Alliance, 141 Pa. Superior Ct. 53 (1940), the life certificate provided that no life benefit should be paid in case of death due to excessive use of alcohol. Defendant alleged that death was due to that cause and it was held that the burden was on defendant to prove that death was due to a cause excepted in the policy. In Shaffer v. Hebenstreit et al., 119 Pa. Superior Ct. 159 (1935) defendant's liability insurance carrier denied liability under its policy, contending that the case came within an exclusion clause providing that the company should not be liable

for accidents occurring while the automobile was being operated by an unlicensed driver or a person under the influence of liquor. It was held that the burden was upon defendant to allege and prove these facts. These cases sustain the ruling of the court in this case.

To sustain the burden upon it defendant proved that plaintiffs' servant left the upset cargo unattended for seven hours. The burden was upon plaintiffs to come forward with evidence to explain or excuse that neglect, and the question of whether the absence of the driver constituted a failure to use reasonable means to save and preserve the property would be for the jury: Sgro v. Stuyvesant Insurance Co., 132 Pa. Superior Ct., 444, 460 (1938). By way of explanation of the driver's failure to return to the scene we have no testimony except his statement that he was feeling the effects of the shock with nothing to show the extent of the shock or the extent to which it disabled him. Neither side called the truck driver, who was the only person who could give testimony to show the real cause for the delay. The jury was entitled to this testimony.

We cannot, however, enter judgment n. o. v. The suit was for 354 bushels of peaches of which 50 bushels were damaged as a result of the upset of the truck. Defendant would be liable for these 50 bushels regardless of the neglect of plaintiffs' employe to protect the remaining 304 bushels. We cannot enter judgment notwithstanding the verdict as to part of the claim and at the same time enter judgment on the verdict for the remainder of the claim. In any event we feel that the ends of justice require a new trial in order that all of the facts may be developed. Accordingly, a new trial will be granted.

And now, August 25, 1948, defendant's motion for judgment n. o. v. is overruled and its motion for a new trial is granted.